# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Beverly Wigginton, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | Case No: 11 C 50162 |
| | ) | |
| Bank of America Corp., et al., | ) | |
| | ) | |
| *Defendants*. | ) | Judge Frederick J. Kapala |

## ORDER

Defendants' motions to dismiss [89] [91] [95] are granted. This case is closed.

## STATEMENT

On October 31, 2012, plaintiffs, Beverly Wigginton, Richard Wigginton, and Trinity Love Wigginton, proceeding pro se at the time,[1] filed their second "Amended Complaint" against defendants, Bank of America Corporation ("BAC") and Bank of America, N.A. ("BOA") (collectively, "Bank of America"), and the Federal Housing Administration ("FHA") and the United States Department of Housing and Urban Development ("HUD") (collectively, the "federal defendants"). In their 16-count complaint, plaintiffs allege generally that defendants discriminated against them based on their disabilities and hindered their efforts to obtain approval of a mortgage for the purchase of a home, in violation of the Fair Housing Act, 42 U.S.C. § 3604 (Counts I, IX, and XII); the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA") (Counts II, X, and XIV); the Rehabilitation Act, 29 U.S.C. § 794 (Counts III, XI, and XV); 42 U.S.C. § 1983 (Counts IV, XII, and XVI); and various state law causes of action (Counts V-VIII). Currently before the court are multiple motions to dismiss filed by defendants. For the reasons stated below, the court grants defendants' motions and dismisses the complaint.

## I. BACKGROUND

Unless otherwise noted, the following facts are taken from plaintiffs' complaint and are presumed to be true for purposes of the pending motions to dismiss. Plaintiffs, who are all disabled and receive Social Security Disability Insurance income ("SSDI"), sought and received conditional approval for an FHA home loan from Bank of America. Shortly thereafter, on June 18, 2009, plaintiffs entered into a contract to purchase a house located in Poplar Grove, Illinois, for a sale price of $69,900, and on July 1, 2009, Bank of America initiated a mortgage application based on this

---

[1] Although plaintiffs' amended complaint was electronically filed by their appointed counsel, the complaint was signed by plaintiffs, but not counsel. It is unclear why this occurred, but defendants have waived any challenge to this potential defect by not raising an argument on this issue.

purchase contract. On July 22, 2009, while the application was pending, a Bank of America employee requested further documentation from plaintiffs, including "a letter from a doctor for each of you since you are both on disability stating whether or not your medical conditions are likely to improve within the next three years or is this a lifetime disability."[2] After plaintiffs protested this request, they were told that the requirement was "standard documentation on any loan." The next day, the Bank of America employee clarified that the bank only required proof that plaintiffs' SSDI benefits would continue for three years. This requirement is consistent with, and stems from, the FHA lender guidelines provided in the HUD Handbook 4155.1 Section 4.E.3.c, which states: "Income received from government assistance programs is acceptable for qualifying, as long as the paying agency provides documentation indicating that the income is expected to continue for at least three years." Thereafter, plaintiffs contacted the Social Security Administration and their doctors' offices, but they were unable to obtain the required documentation from either of these sources. Because plaintiffs could not document that their SSDI benefits were expected to continue for at least three years, Bank of America determined that there was insufficient income to support the loan and denied plaintiffs' mortgage application on or about July 31, 2009.

On or about the same day, July 31, 2009, plaintiffs filed a complaint against Bank of America with the FHA and HUD alleging violations of the Fair Housing Act, which apparently caused their mortgage application to be reopened.[3] Thereafter, between July 31, 2009 and August 21, 2009, Bank of America, the federal defendants, and plaintiffs "engaged in numerous, unnecessary, and discriminating exchanges of documentation regarding [plaintiffs'] disabilities and the documentation of said disability."[4] On or about August 21, 2009, Bank of America approved plaintiffs' mortgage application conditioned on a new appraisal and completion of certain repairs.[5] However, according to plaintiffs, on or about August 25, 2009, the sellers of the house withdrew from the purchase contract, allegedly based on the "failure by [plaintiffs] to obtain a mortgage due to delays originating with Bank of America," and on August 31, 2009, Bank of America denied the

---

[2] In their complaint, plaintiffs allege that a Bank of America employee asked them to "produce doctor's letters for both Beverly Wigginton and Richard Wigginton as to their medical conditions and the extent of their disabilities." The precise request, which is quoted in the text above and is consistent with plaintiffs' allegation, is contained in the "Findings" section of HUD's "Determination of No Reasonable Cause," which is attached as Exhibit A to BOA's memorandum in support of its motion to dismiss.

[3] Plaintiffs' administrative complaint was later denied on January 11, 2012, in a document styled "Determination of No Reasonable Cause."

[4] Although it appears as if plaintiffs' mortgage application was reopened sometime after plaintiffs filed their administrative complaint, it is unclear from the vague allegation quoted above exactly what transpired between the parties during this three-week time period. Moreover, the court notes that it is not required to accept any conclusory allegations in the complaint, such as plaintiffs' assertion that the communication between the parties was discriminatory.

[5] Plaintiffs do not specify in their complaint how they were able to show that their SSDI benefits were expected to continue for at least three years in order to secure the August 21, 2009 conditional approval, but it appears from HUD's "Determination of No Reasonable Cause" that on August 5, 2009, Bank of America was advised by FHA officials that "a two- to three-year history of receipt of disability income from Social Security indicates a permanent disability." By all indications, plaintiffs were able to show such a history of disability income to the satisfaction of Bank of America.

2

mortgage application based on a failure to complete the requested repair work.

The instant lawsuit was initiated by plaintiffs against Bank of America and several of its employees on June 2, 2011.[6] A short while later, on July 15, 2011, plaintiffs initiated another pro se lawsuit in the Eastern Division of this District, Case No. 11 C 4802, based on the same general factual allegations noted above against the federal defendants and others. On August 1, 2011, this second lawsuit was dismissed on initial review pursuant to 28 U.S.C. § 1915. The federal defendants were then added to the instant lawsuit on August 5, 2011, when plaintiffs filed their first amended complaint by simply appending to their original complaint what appears to be a copy of the dismissed complaint from Case No. 11 C 4802. While facing several motions to dismiss, plaintiffs were appointed counsel and eventually granted leave to file another amended complaint, which they did on October 31, 2012. Shortly thereafter, defendants filed their renewed motions to dismiss, which are currently pending before this court.

## II. ANALYSIS

### A. Legal Standard

When ruling on a motion to dismiss, this court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007). To properly state a claim, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but plaintiffs must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." Id. at 679.

### B. BAC's Motion to Dismiss

As an initial matter, BAC has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), arguing that this court lacks personal jurisdiction over BAC, which is a financial services holding company that does not exercise an unusually high degree of control over BOA, its wholly-owned subsidiary. In their response, plaintiffs concede the validity of this argument. Accordingly, the court grants the motion and dismisses BAC from this action based on a lack of personal jurisdiction.

### C. BOA's Motion to Dismiss

Plaintiffs likewise concede the validity of several of the arguments in BOA's motion to dismiss. In particular, plaintiffs agree that their § 1983 claim against BOA is duplicative of their claims brought under the ADA or the Rehabilitation Act,[7] and that their state law claims are preempted by the Illinois Human Rights Act, 775 ILCS 5/8-111(C). Accordingly, the court

---

[6]The Bank of America employees named in the original complaint are no longer named as parties in the current amended complaint and so no action pends against them.

[7]Perhaps even more problematic to plaintiff's § 1983 claim is the fact that BOA is not a state actor acting under color of state law. This would also provide a sufficient basis for the dismissal of Count IV.

3

dismisses Counts IV through VIII and must only address BOA's arguments with respect to Counts I through III.[8]

Plaintiffs' claims in Counts I through III brought under the Fair Housing Act, the ADA, and the Rehabilitation Act, respectively, each require plaintiffs to plead similar allegations, namely that (1) plaintiffs are disabled, (2) they were discriminated against because of their disability, and (3) they were otherwise qualified for the benefit they were seeking. See 42 U.S.C. § 3604(f)(1)[9] (making it unlawful under the Fair Housing Act "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter"); 42 U.S.C. § 12182(a) (making it unlawful under the ADA to "discriminate[] against [an individual] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation"); 29 U.S.C. § 794(a) (making it unlawful under the Rehabilitation Act for an "otherwise qualified individual with a disability in the United States . . . solely by reason of her or his disability, [to] be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance").

In its motion to dismiss, BOA does not challenge whether plaintiffs are disabled within the meaning of these various causes of action. Rather, BOA argues that plaintiffs have failed to plausibly allege that they were discriminated against because of their disability, and that plaintiffs have not alleged that they were otherwise qualified for the mortgage. After careful consideration of the parties' arguments, the court agrees with BOA that plaintiffs have failed to state a claim upon which relief can be granted in Counts I through III.

Nowhere in plaintiffs' complaint do they clearly allege how, in their view, BOA discriminated against them because of their disability. In Count I, plaintiffs simply allege in a conclusory fashion that "Bank of America did discriminate against the Wiggintons in the provision of services in connection with the sale of a dwelling on the basis of disability, in violation of 42 U.S.C. § 3604." This statement, however, is nothing more than a recitation of the elements of their claim, and it does not suffice to plausibly state a claim for relief. See Iqbal, 556 U.S. at 678 (explaining that "a formulaic recitation of the elements of a cause of action will not do" (quotation marks omitted)). Plaintiffs provide slightly more detail in their allegations for Counts II and III, wherein they state that BOA "discriminated against the Wiggintons in the provision of a mortgage loan by requiring evidence of the continuing nature of their disability . . . ." But simply requesting information regarding plaintiffs' disability income in order to comply with the FHA guidelines does not, by itself, plausibly suggest that BOA was discriminating against plaintiffs because of their

---

[8]Plaintiffs also concede that their claim against BOA under Title II of the ADA, which prohibits discrimination by a "public entity," see 42 U.S.C. § 12132, fails to state a claim. Based on this concession, it is clear that Count II of plaintiff's complaint must be dismissed. Nevertheless, because plaintiffs are seeking leave to file an amended complaint in order to raise a claim under Title III of the ADA, based on their allegation that BOA is a "public accommodation" as defined in 42 U.S.C. § 12181, the court will address the merits of this amended ADA claim.

[9]Although plaintiffs' claim under the Fair Housing Act is clearly brought pursuant to 42 U.S.C. § 3604 in their complaint, it appears that § 3605, which specifically prohibits discrimination in residential real estate-related transactions, would have been the more appropriate section for their claim. Nevertheless, this defect does not alter the court's analysis on Count I.

4

disabilities. Moreover, it is important to realize that the only reason BOA was seeking further information about plaintiffs' disability income was because plaintiffs were apparently attempting to rely on that income to secure their mortgage. Once plaintiffs put their disability income into issue by relying on that income as part of their mortgage application, they cannot then turn around and claim that the bank was discriminating against them simply because the bank asked if that disability income was likely to continue for the next three years. See, e.g., 15 U.S.C. § 1691(b)(2) (providing, for purposes of the Equal Credit Opportunity Act, that "[i]t shall not constitute discrimination . . . to make an inquiry of . . . whether the applicant's income derives from any public assistance program if such inquiry is for the purpose of determining the amount and probable continuance of income levels, credit history, or other pertinent element of credit-worthiness"). Therefore, based on the minimal facts alleged in the complaint and the lack of a clear theory of discrimination, the court agrees with BOA that plaintiffs have not properly alleged that they were discriminated against because of their disabilities.[10]

Likewise, plaintiffs have failed to plausibly allege that they were otherwise qualified for the mortgage they were seeking. In their complaint, plaintiffs admit, with respect to the first denial of the mortgage application, that they were unable to provide any documentation showing that their disability income was likely to continue for at least three years. There is no dispute that without this source of income to support their mortgage application, plaintiffs were not qualified for the requested loan amount. Moreover, after the mortgage application was reopened, presumably because BOA learned that it could rely on plaintiffs' history of receiving disability income to infer that those benefits would continue in the future, plaintiffs still failed to allege that they were qualified for the mortgage. At that time, their mortgage application was conditionally approved subject to, among other things, the completion of certain repairs, but plaintiffs have failed to allege in their complaint that they completed those repairs.

Because plaintiffs have failed to plausibly allege that they were discriminated against because of their disability and that they were otherwise qualified for the mortgage, they have failed to state a claim for a violation of the Fair Housing Act, the ADA, or the Rehabilitation Act. Accordingly, BOA's motion to dismiss is granted and Counts I through III are dismissed.

In their response to the motion to dismiss, plaintiffs request leave to file another amended complaint and have submitted a proposed amended complaint in accordance with this court's standing order. In their proposed amended complaint, plaintiffs simply add the following two allegations to each of the claims against BOA: (1) "[t]hat the Wigintons were able to meet all of the conditions for the mortgage loan offered by Bank of America," and (2) "[t]hat the Wigintons were prevented from meeting all of the conditions for the mortgage loan offered by Bank of America

---

[10] To the extent that plaintiffs are claiming discrimination based solely on the poorly-worded initial request for documentation that seemed to be seeking information about plaintiffs' "medical conditions," as opposed to their disability income, the court rejects such an argument. After this initial request and plaintiffs' subsequent protest, BOA immediately clarified that it was not seeking any information about the precise nature or medical diagnosis of plaintiffs' disabilities, but rather was merely trying to confirm that their disability income was reasonably expected to continue for at least three years. Under these circumstances, the court declines to hold BOA liable because of a simple miscommunication where there are no allegations to suggest that there was any kind of discriminatory intent or animus behind this misguided request.

5

due to the delays in obtaining the mortgage loan as a result of Bank of America's discrimination."

After review, the court denies plaintiff's request to file an amended complaint. These new allegations, which are only directed at the third element of whether plaintiffs were otherwise qualified for the mortgage, are insufficient to cure the problems noted above. The first new allegation is a bare recitation of one of the elements of their claim, which is insufficient to plausibly state a claim for relief. See Iqbal, 556 U.S. at 678. The second allegation, while a little more robust, is improper because it assumes what it is trying to establish – that BOA discriminated against plaintiffs based on their disabilities. However, as discussed above, the current complaint contains no allegations that plausibly suggest that plaintiffs were discriminated against because of their disabilities, and plaintiffs have not even attempted to cure this defect in the proposed amended complaint. Accordingly, there is no basis to attribute any delay in the approval process to disability discrimination on the part of BOA. Furthermore, plaintiffs have not alleged any facts to plausibly suggest that the repairs were unnecessary or that, but for the delay, they would have been capable of making the required repairs, nor have they shown what efforts were made to complete the repairs between the time that their mortgage application was conditionally approved and the time it was denied based on the lack of repairs.

For all these reasons, the court grants BOA's motion to dismiss, dismisses Counts I through VIII in their entirety, declines to allow plaintiffs to file their proposed amended complaint, and dismisses BOA from this action.

### D.  Federal Defendants' Motion to Dismiss

The remaining counts in the complaint allege violations of the Fair Housing Act, the ADA, the Rehabilitation Act, and § 1983 against FHA and HUD. These federal defendants have filed a motion to dismiss, arguing that all of these claims are barred by res judicata because they were previously raised and dismissed in plaintiffs' previous lawsuit that was filed in the Eastern Division, Case No. 11 C 4802. In their response, plaintiffs concede the validity of the federal defendants' res judicata argument, but request leave to file a new proposed claim that was not part of the previous action. Based on this concession, the court grants the federal defendants' motion to dismiss as to the claims raised in Counts IX through XVI of the amended complaint and will consider only plaintiffs' proposed new claim.

In the proposed amended complaint, plaintiffs seek to raise a retaliation claim against HUD pursuant to the Rehabilitation Act, 29 U.S.C. § 794. According to plaintiffs, the "Final Investigative Report," which appears to be plaintiffs' reference to HUD's "Determination of No Reasonable Cause" closure document, denied plaintiffs' administrative claim after finding no discriminatory conduct by Bank of America and was a direct result of, and in retaliation for, plaintiffs' complaint against the federal defendants in Case No. 11 C 4802. This proposed new claim lacks merit for a number of reasons.

First, other than the fact that HUD's administrative decision came after the federal complaint, there are no factual allegations to plausibly suggest that the decision was retaliatory. In fact, that decision was consistent with this court's analysis discussed above with respect to the claims against BOA, and there has been no plausible explanation provided for why HUD would want to retaliate against plaintiffs because of a lawsuit that was dismissed on initial review before HUD was even

served. Accordingly, this new proposed claim fails to state a claim for relief.

Second, although plaintiffs purport to bring their retaliation claim against HUD under the provisions of 29 U.S.C. § 794, that section does not provide any basis for relief. In general, § 794 prohibits discrimination "under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). A claim for retaliation is permissible under § 794(d), which incorporates by reference certain standards and provisions of the ADA, but only for "a complaint alleging employment discrimination." Id. § 794(d). Because plaintiffs are not alleging an employment-based retaliation claim, § 794 cannot provide them with any relief.

Finally, and perhaps most importantly, even if plaintiffs' retaliation claim was properly alleged, the claim would nevertheless be barred by sovereign immunity. See Lane v. Pena, 518 U.S. 187, 192-93 (1996) (holding that, aside from a narrow category of violations not applicable here, "[t]he clarity of expression necessary to establish a waiver of the Government's sovereign immunity against monetary damages for violations of [§ 794] is lacking in the text of the relevant provisions"); see also Davis v. U.S. Dep't of Hous. & Urban Dev., 94 F.3d 647, 1996 WL 467650, at *3 (7th Cir. Aug. 14, 1996) (dismissing a claim for monetary damages against HUD based on sovereign immunity); 29 U.S.C. § 794a(a)(2) (providing only a limited waiver of sovereign immunity, not applicable here, and allowing monetary damages "to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title").

For all these reasons, the court grants the federal defendants' motion to dismiss, dismisses Counts IX through XVI in their entirety, declines to allow plaintiffs to file their proposed amended complaint, and dismisses FHA and HUD from this action.

### III. CONCLUSION

Based on the foregoing, defendants' motions to dismiss are granted and the amended complaint is dismissed. Plaintiffs' requests for leave to file another amended complaint are denied.

Date: 9/11/2013

ENTER:

_____

FREDERICK J. KAPALA

District Judge